# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| LAMAR ADVERTISING OF MICHIGAN, INC., | Case No. 21- |
| Plaintiff, | Hon. |
| | Magistrate Judge |
| v. | **COMPLAINT** |
| CITY OF TAYLOR, | |
| Defendant. | |

---

BODMAN PLC
By:   J. Adam Behrendt (P58607)
       Melissa Benton Moore (P73018)
201 W. Big Beaver, Suite 500
Troy, MI 48084
(248) 743-6000
jbehrendt@bodmanlaw.com
mmoore@bodmanlaw.com
Attorneys for Plaintiff

# COMPLAINT

Plaintiff Lamar Advertising of Michigan, Inc. ("Lamar") complains against defendant City of Taylor ("City") as follows:

## PARTIES

1. Lamar is a Michigan corporation with its principal place of business in Wayne County, Michigan.

2. Lamar engages in the business of erecting and maintaining outdoor advertising displays, commonly known as billboards, on property it owns or leases for that purpose. Lamar uses its billboards for the display of noncommercial and truthful commercial messages. Lamar earns income by charging its advertisers for the display of their messages on its billboards.

3. The City is a city chartered under the laws of the State of Michigan and is located in Wayne County, Michigan.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action under 28 U.S.C. § 1331 because Lamar asserts claims arising under the United States Constitution and 42 U.S.C. § 1983.

5. The Court has jurisdiction over this action under 28 U.S.C. § 1343(a)(3) and (4) because Lamar seeks to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the

City resides in this judicial district.

## COMMON ALLEGATIONS

7. The City regulates billboards and other signs through Article XVIII of its Zoning Ordinance.

8. Section 18.01 of the Zoning Ordinance states that the intent of the Zoning Ordinance "is to regulate signs within the City of Taylor" and that "[t]he regulations and standards of this article are intended to be content neutral and are considered the minimum amount necessary to achieve a substantial government interest for public safety, aesthetics, and protection of property values."

9. Section 18.01 of the Zoning Ordinance further states:

> These objectives are accomplished by establishing the minimum amount of regulations necessary concerning the size, placement, construction, illumination and other aspects of signs in the city so as to:
>
> (a) Protect the public right to receive or convey messages and information protected by the First Amendment of the U.S. Constitution.
>
> (b) Maintain and improve the image of the city by encouraging signs of consistent size which are compatible with and complementary to related buildings and uses, and harmonious with their surroundings.
>
> (c) Recognize that the proliferation of signs is unduly distracting to motorists and nonmotorized travelers, reduces the effectiveness of signs directing and warning the public, causes confusion, reduces desired uniform traffic flow, and creates potential for accidents.
>
> (d) Recognize that the principal intent of commercial

3

signs is for identification of an establishment on the premises, and not for advertising off-premises activities.

(e) Enable the public to locate goods, services and facilities without excessive difficulty and confusion by restricting the number and placement of signs.

(f) Prevent placement of signs which will conceal or obscure signs of adjacent uses.

(g) Prevent off-premises signs form [sic] conflicting with land uses.

(h) Prevent signs that are potentially dangerous to the public due to structural deficiencies or disrepair.

(i) Prohibit most portable commercial signs in recognition of their significant negative impact on traffic safety and aesthetics.

10. Consistent with the Zoning Ordinance's statement of intent, when the City applies its Zoning Ordinance, it makes distinctions in the regulation of signs based on their content.

11. The U.S. Court of Appeals for the Sixth Circuit has made clear in *International Outdoor v. City of Troy*, 974 F.3d 690 (2020), that a municipality's regulations of signs based on their content are subject to strict scrutiny.

12. The Zoning Ordinance's distinctions based on content do not survive strict, or even intermediate, scrutiny.

13. Specifically, the City's Zoning Ordinance defines a "billboard" as "[a] sign other than an off-premises directional sign or political sign, which does not pertain to the principal use of the premises and which is regulated in accordance

4

with the highway advertising act, Public Act No. 106 of 1972 (MCL 252.301 *et seq.*), as amended, and this ordinance." *See* Section 28.11(i)(4).

14. Section 18.06 of the Zoning Ordinance only permits a "billboard" in the I-1 and I-2 zoning districts of the City, and subjects a billboard to the following regulations:

| Type of Sign | Where Permitted | Permit Required | Maximum Height | Maximum Size (per face) | Maximum Number | Additional Requirements |
|---|---|---|---|---|---|---|
| Billboards | I-1 and I-2 districts | Yes | As established for buildings in the zoning district; however, 45 ft. if in a district adjacent to interstate, Bottom shall be at least 15 ft. from ground if within 4 ft. of any surface serving automobiles | 300 sq. ft per sign face, max. of 2 sign faces | -- | Section 18.06 (b)(2) |

Table 18.06.a Specific Sign Requirements

15. Section 18.06(b)(2) sets forth the following additional regulations for billboards:

> a. Billboards shall be located on a lot adjacent to and face the I-94 highway.
>
> b. Billboards shall be located at least 200 feet from any park, playground, school, church and residential district or use.
>
> c. Billboards shall be located at least 50 feet from the street right-of-way.
>
> d. Billboards shall be separated by a minimum of 1,000 lineal feet along freeways and streets having a right-of-way of 120 feet or more in width. The spacing requirements apply to signs on either side of the street and shall be measured parallel to the right-of-way.
>
> e. The applicant must demonstrate that they have

5

obtained all permits required by the state.

f. Site plan review is required in accordance with article 19, site plan review.

g. There shall be an unobstructed access to a proposed billboard structure, for operation, maintenance, repair, and inspection purposes, which may be provided through an easement. This access shall have a width and location determined by such factors as: the location of adjacent thoroughfares and traffic circulation within the site; and any attendant facilities; the location of buildings and parking facilities; proximity to residential districts and minimizing disturbance to the natural landscape; and the type of equipment which will need to access the site.

16. Other signs – such as "community special event signs," "construction signs," "garage sale or open house signs," "political signs," and "real estate" signs – are permitted in all districts and are subject to different regulations.

17. Lamar operates a static, 10' x 30' billboard in the City of Taylor on US-24 just south of Goddard Road. The property on which Lamar maintains its billboard is zoned B-3.

18. Signs with digital display offer speakers—like Lamar—with the opportunity to change the content of their message displayed on their billboard instantaneously and without the need to physically change the message displayed. This modernization of the way in which Lamar's signs display their message allow it to provide more opportunities to speak to different speakers.

19. Lamar submitted an application to the City for a permit to convert its

Bodman_17919063_3

static billboard into a digital one.

20. As part of its application, Lamar paid all required fees.

21. The City denied Lamar's application and refused to issue the requested permit because Lamar's billboard is located in an area that is not zoned as I-1 or I-2 and, therefore, Lamar's billboard is a nonconforming use in a commercial or business zoning district.

22. The City relied on Section 18.07(c)(3), which states that "[n]onconforming signs shall not be replaced with another nonconforming sign."

23. Despite the regulations in the Zoning Ordinance, the City operates its own digital sign within the City on City-owned property that is not located within an I-1 or I-2 zoning district.

24. The City's digital sign is a "billboard" under Section 28.11(i)(4) of the City's Zoning Ordinance.

25. Upon information and belief, the City sells digital advertising spaces to advertisers on its City-owned billboard and was erected after the enactment of enactment of its Zoning Ordinance.

26. The City is competing with outdoor advertising companies in the area, including Lamar, through its ownership and use of its own digital billboard.

27. Other than the fact that the City would not stand to benefit economically from the billboard, Lamar's intended use of a digital billboard in a

zoning district that is not I-1 or I-2, is no different than the City's use of its billboard.

28. The City's decision to enforce (or to not enforce) its Zoning Ordinance on favored speakers or, in this case, itself, differently than Lamar cannot survive the heightened standard of review.

29. The City cannot meet its burden to show that its regulation or enforcement to favor its own advertising business advances a compelling governmental interest that is narrowly tailored to achieve that interest.

## COUNT I
## 42 U.S.C. § 1983
## DEPRIVATION OF CIVIL RIGHTS UNDER COLOR OF STATE LAW
## FREE SPEECH

30. Lamar incorporates the foregoing paragraphs as though fully restated herein.

31. Billboard advertising is a form of speech protected under the First and Fourteenth Amendments to the U.S. Constitution.

32. The City has acted under color of state law in its attempts to prohibit Lamar from converting its existing static billboard to a digital billboard.

33. To satisfy the First and Fourteenth Amendments and because the City distinguishes signs on the basis of their content, any attempt by the City to regulate or restrict Lamar's ability to erect or maintain a digital billboard is subject to strict scrutiny and, accordingly, must advance a compelling governmental interest and be

8

narrowly tailored to achieve that interest.

34. In its Zoning Ordinance, the City has enacted location and other regulations for billboards, which require billboards to be in areas zoned as I-1 or I-2 zoning districts.

35. The City has made an exception for itself and currently maintains a digital billboard in an area that is not zoned as an I-1 or I-2 zoning district.

36. The City, however, has relied on the sections in its Zoning Ordinance requiring billboards to be within an area zoned as an I-1 or I-2 zoning district and prohibiting the substitution of nonconforming signs or erection of a new sign to deny Lamar's request to convert or replace its existing static billboard into a digital one.

37. The City's purported regulations do not satisfy strict scrutiny because the City does not consistently enforce such regulations when dealing with itself or favored speakers that provide the City with an economic benefits.

38. The City's decision to enforce (or not enforce) its Zoning Ordinance more favorably for itself and to the detriment of Lamar and other outdoor advertisers does not advance a compelling governmental interest and, even if it did, it would not be narrowly tailored to achieve that interest.

39. Thus, the City's billboard regulations are unconstitutional on their face and as applied against Lamar.

Bodman_17919063_3

WHEREFORE Lamar prays for judgment against the City of Taylor granting Lamar injunctive and declaratory relief and awarding it damages in an amount to be determined at trial, together with attorney fees authorized by 42 U.S.C. § 1988, plus costs and interest.

**COUNT II**
**42 U.S.C. § 1983**
**DEPRIVATION OF RIGHT TO EQUAL PROTECTION**
**UNDER COLOR OF STATE LAW**

40. Lamar incorporates the foregoing paragraphs as though fully restated herein.

41. The City has enacted and enforced its Zoning Ordinance under color of state law.

42. The City has not enforced its Zoning Ordinance on itself or preferred speakers.

43. Meanwhile, the City refuses to grant Lamar its requested permits for a digital billboard.

44. The City has denied Lamar its right to equal protection of the law by denying Lamar the right to convert its static billboard to a digital billboard while it allows favored speakers, such as itself or others who provide the City with an economic benefit, to erect and maintain digital billboards within the City.

45. Lamar has suffered and will continue to suffer financial harm because of its inability to convert its existing static billboard into a digital billboard in the

City.

WHEREFORE, Lamar prays for judgment against City of Taylor granting Lamar injunctive and declaratory relief and awarding it damages in an amount to be determined at trial, together with attorney fees authorized by 42 U.S.C. § 1988, plus costs and interest.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BODMAN PLC |
|  | By: /s/ J. Adam Behrendt<br>    J. Adam Behrendt (P586070<br>    Melissa Benton Moore (P73018)<br>201 W. Big Beaver, Suite 500<br>Troy, MI  48084<br>(248) 743-6000<br>jbehrendt@bodmanlaw.com<br>mmoore@bodmanlaw.com |
| November 4, 2021 | Attorneys for Plaintiff |